UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RONALD D. ADKINS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-465-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Ronald D. Adkins ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him supplemental security income ("SSI"). Each party has moved for judgment [Docs. 10 & 13] and filed supporting briefs [Docs. 12 & 14]. This matter is now ripe. For the reasons stated below, (1) Plaintiff's motion for judgment on the administrative record [Doc. 10] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 13] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

As reflected in the transcript of the administrative proceedings [Doc. 5 ("Tr.")], Plaintiff filed his application for SSI on February 8, 2013, alleging disability beginning May 24, 2012 (Tr. 11, 132). Plaintiff's claim was denied initially and on reconsideration at the agency level. After a hearing was held on August 19, 2015, the administrative law judge ("ALJ") found on September 17, 2015, that Plaintiff was not under a disability as defined in the Social Security Act (Tr. 11-19). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4). Plaintiff timely filed the instant action [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born November 16, 1957 (Tr. 27).  Plaintiff has a seventh grade education and is able to communicate in English (Tr. 28).  Plaintiff has past relevant work as a general laborer (Tr. 18, 36, 165).

### B.     Medical Records

In his Disability Report, Plaintiff alleged disability due to "schizophrenia/right side numb/mental depression/nerves" and "hbp" or high blood pressure (Tr. 183).  The ALJ also noted Plaintiff alleged lower back and right shoulder pain (Tr. 14).  Plaintiff [Doc. 12 at Page ID # 502-04] and the ALJ (Tr. 13-14, 16-18) each set forth a detailed, factual recitation with regard to Plaintiff's medical record, vocational record, and the hearing testimony.  Defendant generally adopts the statement of facts set forth by the ALJ, but includes citation to the record throughout her argument [Doc. 14 at Page ID # 515, 517-30].  While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C.     Hearing Testimony

At the hearing before the ALJ, Plaintiff and a vocational expert ("VE") testified.  The transcript of the testimony at the hearing has been reviewed (Tr. 24-53).

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration (the "SSA" or the "Agency") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.     The ALJ's Findings**

At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, February 8, 2013[1] (Tr. 13). At step two, the ALJ found Plaintiff had the following severe impairments: mood disorder; rule out borderline intellectual functioning; adult anti-social behavior; and polysubstance abuse (Tr. 13). The ALJ found that Plaintiff's high blood pressure and resulting headaches were nonsevere because they could be controlled with medication (Tr. 13-14). The ALJ also noted Plaintiff alleged lower back pain and shoulder pain, but found these complaints were not supported by any appropriate imaging, and therefore did not "amount to a medically determinable impairment." (Tr. 14). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).

---

[1] SSI applicants such as Plaintiff are not entitled to benefits until "the month following the month" that the application is filed, regardless of the date of alleged disability onset. 20 C.F.R. § 416.335.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: "he can perform simple and low-level detailed work; he can occasionally interact with the general public, co-workers, and supervisors; and he can adapt to infrequent changes at work (which is approximately 50% of the work process)." (Tr. 15-16). At step four, the ALJ found Plaintiff was capable of performing past relevant work as a general laborer, at the medium exertional level with a specific vocational preparation ("SVP") rating of 2, which constitutes unskilled work[2] (Tr. 18-19). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the date the application was filed through the date of the ALJ's decision (Tr. 19).

## IV.    ANALYSIS

Plaintiff asserts this matter should be reversed and benefits awarded under sentence four for several reasons: (1) The "ALJ committed errors by failing to include posttraumatic stress disorder, psychotic disorder, sciatica, right shoulder pain and headaches as severe impairments." (2) The "ALJ committed errors by finding that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels." (3) The "ALJ committed errors by finding that [Plaintiff] is capable of performing past relevant work as a general laborer." (4) The ALJ erred by failing to find Plaintiff was capable of, at most, light work, which given Plaintiff's age, education, and past work experience, would have required a finding of disabled based on the

---

[2] The ALJ described SVP 2 rated work as "semi-skilled" (Tr. 18); however, the SSA considers jobs rated at SVP 1 or 2 to be unskilled. *See* Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704 (Dec. 4, 2000) ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").

Medical-Vocational Guidelines [Doc. 12 at Page ID # 504-05]. Moreover, although not specifically identified as an issue for the Court, Plaintiff repeatedly challenges the ALJ's assessment of Plaintiff's "credibility" [*see* Doc. 12 at Page ID # 507 ("Respectfully, the ALJ applied incorrect legal standards and did not follow SSA regulations in assessing the credibility of Mr. Adkins.")].

The Court will first address the credibility assessment. The Court will then address Plaintiff's arguments concerning the impairments the ALJ found to be non-severe. The remaining issues are all essentially an attack of the ALJ's formulation of Plaintiff's physical RFC.[3] Accordingly, the last issue the Court will consider is whether Plaintiff's physical RFC is supported by substantial evidence in the record.

## A.    Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing

---

[3] The ALJ found Plaintiff was capable of performing all levels of exertional work (with certain non-exertional limitations, the sufficiency of which Plaintiff does not challenge). Plaintiff's past relevant work was at the medium exertional level; accordingly, if the physical RFC is supported by substantial evidence, it follows that Plaintiff is capable of medium exertional work and therefore capable of performing the physical requirements of his past work. Moreover, the VE testified that, given Plaintiff's RFC, he was capable of performing his past work. "The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation omitted). The Court also notes the burden rests with Plaintiff to show he is unable to return to his former type of work. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987) (citations omitted).

42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing."  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.      The ALJ's Credibility Assessment**

Plaintiff argues the ALJ erred in discounting his credibility because, according to Plaintiff, his "testimony was entirely consistent" with the objective medical evidence of record. Plaintiff also argues the ALJ improperly weighed Plaintiff's subjective complaints concerning his pain [Doc. 12 at Page ID # 507-08].

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the

evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.[4] "It is not sufficient to make a conclusory statement 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* The ALJ need not, however, specifically address every factor listed in SSR 96-7p when making a credibility determination. *O'Mary v. Colvin*, No. 3:13-CV-458-TAV-CCS, 2014 WL 4348183, at *12 (E.D. Tenn., Sept. 2, 2014) (citation omitted).

Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence); *see also Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *White v.*

---

[4] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates use of the term "credibility" from SSA policy as the SSA's regulations do not use this term, and it clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016, several months after the ALJ issued his decision on September 17, 2015. SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment, which is exactly what the ALJ has done in this matter, so it is not necessary to determine whether SSR 16-3p applies retroactively. *See Dooley v. Comm'r of Soc. Sec.*, No. 16-5146, 2016 WL 4046777, at *5 n.1 (6th Cir. July 28, 2016). As the record in this case and much of the existing case law refers to "credibility" evaluations, this memorandum will occasionally refer to the ALJ's analysis using the same term.

*Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (citation omitted) (concluding the ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (citation omitted) (stating the ALJ's credibility assessment is entitled to "substantial deference"). Substantial deference has been held to mean that "an [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 16). Contrary to Plaintiff's argument, the ALJ expressly identified significant objective medical evidence that contradicted Plaintiff's testimony concerning the extent of his symptoms. Plaintiff underwent a consultative exam in April 2013 with William Wilkinson, M.D. (Tr. 246-51). As the ALJ noted, Dr. Wilkinson's exam showed "no obvious redness, swelling, joint enlargement, muscle wasting, or anatomic deformity." (Tr. 14; 248). The exam did reveal positive straight leg testing and some limitation in the extension of Plaintiff's dorsolumbar spine, but otherwise it was normal. Plaintiff reported to Dr. Wilkinson that he had shoulder issues such that he could not carry groceries, and testified to the same at the administrative hearing (Tr. 33, 247). Dr. Wilkinson found, however, the results of Plaintiff's shoulder exam were normal (Tr. 248).

Plaintiff also testified at the hearing that he had significant lower back pain; however, as the ALJ notes, a November 2014 lumbar spine x-ray showed "no evidence of fracture, compression, vertebral displacement, or paraspinal masses" (Tr. 14), and the reviewing physician

specifically found that the "lumbar vertebrae and disc spaces [are] well-maintained in height." (Tr. 345). The Sixth Circuit has "upheld ALJ decisions based on . . . discounting of the reliability of a claimant's testimony about disabling pain when an ALJ finds contradictions between medical reports and [the] claimant's testimony." *Joseph v. Comm'r of Soc. Sec.*, No. 17-4158, 2018 WL 3414141 (6th Cir. July 13, 2018) (citing *Walters*, 127 F.3d at 531).

After discussing the objective medical evidence which refuted Plaintiff's complaints of extreme limitations, the ALJ explained that he discounted Plaintiff's credibility based on Plaintiff's "criminal conviction for interstate transportation of fraudulently obtained goods" (Tr. 16). The ALJ further explained that:

> As of February 6, 2014, the claimant had not sought outpatient mental health treatment. During his consultative psychological examination conducted on February 6, 2014 by Dr. Kimberlee Berry-Sawyer, Ph.D., the claimant reported the ability to manage his finances with little or no difficulty, prepare simple meals, wash dishes, keep his area clean, and do his own laundry. His hobbies include walking and listening to music. He also described good relationships with a close friend and his mother, and attending church regularly. These activities do not support his alleged inability to work. Further diminishing his credibility, are the inconsistencies in what he reported during this evaluation compared to what he reported in his April 2013 evaluation (e.g., school history, did not report going to AA for alcohol usage in the past, different information regarding previous psychiatric history and treatment, etc.)

> Lastly, the claimant's presentation and performance during the February 2014 examination was inconsistent with his April 2013 evaluation. During the most recent examination, the claimant was able to recall all three named items immediately after they were said to him. In the serial 3 subtractions from 20, he completed all six iterations successfully. He successfully completed 6 digits forward and 2 digits backwards in the Digit Span tasks; spelled the word "world" correctly forward and backwards; easily named four recent U.S. Presidents; and complete[d] simple addition and subtraction tasks in his head. Curiously, he was unable to perform these tasks

less than one year earlier during his April 2013 examination.

(Tr. 17-18 (citations to the administrative record omitted)). The ALJ also specifically noted the fact that Plaintiff reportedly walked 10 miles to his April 2013 consultative exam (Tr. 14).

Plaintiff does not point to any evidence in the record to contradict these findings, nor does he take issue with the ALJ's conclusion that they detract from his overall credibility. Instead, Plaintiff highlights the evidence in the record which tends to support his credibility (much of which the ALJ addresses in his decision), but that "is not the proper inquiry." *Tweedle v. Comm'r of Soc. Sec.*, No. 18-5009, Docket no. 15, at page 3 (6th Cir. July 16, 2018) (per curiam) (denying Tweedle's argument that the ALJ did not consider the record as a whole in evaluating his credibility), *available at* http://www.opn.ca6.uscourts.gov/opinions.pdf/18a0350n-06.pdf. Rather, if "the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Id.* at page 4 (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

The ALJ identified the objective medical evidence that was inconsistent with Plaintiff's subjective complaints and with Dr. Wilkinson's positive straight leg test results and limited dorsolumbar extension. The ALJ addressed at least some of the relevant factors from 20 C.F.R. § 416.929(c) and SSR 96-7p for evaluating subjective complaints of pain, including that Plaintiff performed extensive activities of daily living despite his complaints of disabling symptoms. The Court concludes the ALJ set forth sufficiently clear reasons, which are supported by substantial evidence, for discounting Plaintiff's credibility. As a result, the ALJ's assessment of Plaintiff's credibility is entitled to great weight. *See King*, 742 F.2d at 974-75. To the extent Plaintiff argues the ALJ should be reversed based on the ALJ's credibility analysis, Plaintiff's motion will be

denied.

### C. The ALJ's Consideration of Plaintiff's Non-Severe Impairments

The ALJ found that Plaintiff's severe impairments consisted of "mood disorder; rule out

borderline intellectual functioning; adult anti-social behavior; and polysubstance abuse" (Tr. 13).

Regarding Plaintiff's non-severe impairments, the ALJ found:

> The claimant has hypertension, and reports headaches when his blood pressure is high. On April 20, 2013, his blood pressure was 129/65, which was only in the prehypertension range. His hypertension was not being treated in October 2014. He began taking medications when he returned to jail in 2015. His most recent notes show that his hypertension is controlled with medication and without report of side effects. I find that the claimant's hypertension, and any headaches resulting therefore, are non-severe because this can be controlled with medication, and thus does not cause significant limitation to the claimant's activities.

> In order to establish the medically determinable impairment, an acceptable medical source must be able to submit evidence from an examination that is supportive of the appropriate signs and symptoms (and functional limitations) attributed to the alleged impairment.

> The claimant alleges lower back pain and right shoulder pain, however, on examination in April 2013, there was no obvious redness, swelling, joint enlargement, muscle wasting, or anatomic deformity. His dorsolumbar spine appeared normal, but exhibited to about 15 degrees extension. His cervical spine demonstrated normal range of motion. Straight leg testing was positive for pain and his knee demonstrated 120 degrees flexion. The remainder of his exam was normal, including muscle strength, reflexes, and sensation. He reported that he could not carry groceries from the car to the house or lift a two-year-old. He stated that he can stand for about eight minutes before having to sit; however, during his consultative psychological examination, the claimant admitted that he walked some 10 miles to the office. He reported right shoulder pain in December 2013, and was prescribed Flexeril at the Southside/Dodson Avenue Community Health Center. His November 29, 2014 lumbar spine x-ray showed no evidence of fracture, compression, vertebral displacement, or paraspinal masses.

13

> Overall, his lumbar vertebrae and disc spaces were well maintained
> in height. The claimant's complaints of pain without appropriate
> imaging do not amount to a medically determinable impairment.

(Tr. 13-14 (citations to the administrative record omitted)).

Plaintiff argues the ALJ erred by not finding Plaintiff's posttraumatic stress disorder ("PTSD"), psychotic disorder, sciatica, right shoulder pain and headaches to be severe impairments [Doc. 12 at Page ID # 504-06].

Plaintiff has the burden of showing he has a severe impairment that meets the 12-month durational requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citation omitted). Plaintiff must show that "he has an impairment that has lasted or is expected to last for a continuous period of at least twelve months and that his impairment has significantly limited his ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1509, 404.1521, 416.909, 416.921).

In support of his argument that his PTSD is a severe impairment, Plaintiff relies solely on the April 2013 consultative exam performed by Dr. Wilkinson [Doc. 12 at Page ID # 506]. It is true Dr. Wilkinson reported "Posttraumatic stress disorder from incarceration" as one of Plaintiff's "primary allegations" (Tr. 247). Dr. Wilkinson also listed PTSD as one of his "impressions" of Plaintiff, indicating that "this could be appropriately treated with medications" (Tr. 249). However, even Plaintiff acknowledges Dr. Wilkinson performed a primarily *physical* examination [Doc. 12 at Page ID # 506]. Dr. Wilkinson did note that Plaintiff had "no obvious psychiatric problems," and had a "[n]ormal intellect for age" (Tr. 248). He also described Plaintiff's "mental status" as: "Appeared a bit confused. Affect was normal. Mood is normal. Thought process is basically normal and had some problems with comprehension." (Tr. 249). Based on the exam

report, it is unclear how Dr. Wilkinson concluded Plaintiff had PTSD, other than by relying on Plaintiff's own subjective complaints. The ALJ properly cited Plaintiff's discounted credibility and the lack of clinical exam findings as good reasons for discounting Dr. Wilkinson's opinion[5] (Tr. 16).

Moreover, the Court notes Dr. Wilkinson assigned no functional limitations based on Plaintiff's alleged PTSD, and a "mere diagnosis . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citation omitted). Rather, a claimant must "produce or point to *some* evidence that indicates an alleged impairment impacts his ability to perform basic work activities." *Johnson v. Astrue*, No. 3:09-CV-317, 2010 WL 2803579, at *5 (E.D. Tenn. June 30, 2010), *R&R adopted*, No. 3:09-CV-217, 2010 WL 2836137 (E.D. Tenn. July 15, 2010). Plaintiff has not done so.

Plaintiff also contends the ALJ "failed to give proper weight to the diagnosis of psychotic disorder made by long time actual mental health care provider Volunteer Behavioral Health Care Systems." [Doc. 12 at Page ID # 506]. The ALJ does not discuss a psychotic disorder diagnosis, and as far as the Court can tell, does not cite to the VBHCS records in his opinion. This is concerning to the Court because it appears Plaintiff worked with various providers at VBHCS several times between mid-2014 and early 2015. VBHCS assisted Plaintiff with getting housing and access to medication (Tr. 378, 382, 384-85). But, as with his PTSD argument, Plaintiff does

---

[5] At the end of his brief, and without further development, Plaintiff very briefly asserts the "ALJ committed errors of law in failing to assign more weight to actual examining and actual treating sources." [Doc. 12 at Page ID # 510]. Under the circumstances, the Court declines to address in detail whether the ALJ properly applied the well-known "treating physician rule" (which was recently abrogated for claims filed after March 27, 2017 (*see* 20 C.F.R. § 404.1520c)). The Court finds there is more than adequate support in the record for the ALJ's consideration of and weight assigned to Dr. Wilkinson's opinion.

not cite to any specific limitations arising as a result of his psychotic disorder that are discussed in the VBHCS records but not covered in the limited mental RFC crafted by the ALJ (simple and low-level detailed work, occasional interactions with the general public, co-workers and supervisors, and infrequent changes). Plaintiff's entire argument regarding the psychotic disorder diagnosis is one-sentence long, and he does not cite to anything specific in the 89-pages of VBHCS records, other than the simple fact of the diagnosis. Plaintiff does not explain or even remotely address why his alleged psychotic disorder symptoms are different than those arising from the "mood disorder; rule out borderline intellectual functioning; adult anti-social behavior; and polysubstance abuse" which the ALJ did find were severe impairments, and which are accommodated in the RFC.

Plaintiff fails to identify what basic work activities his alleged PTSD and psychotic disorder prevent him from being able to perform. It is clear the ALJ considered Plaintiff's various, serious mental health issues in crafting Plaintiff's mental RFC. In particular, the ALJ assigned significant weight to the opinion of the Department of Disability Services specialist, Rebecca Joslin, Ed.D., who found Plaintiff was mildly restricted in his ability to perform activities of daily living, moderately restricted in maintaining social functioning, and moderately restricted in his ability to maintain concentration, persistence or pace (Tr. 18, 69). Accordingly, the Court finds no harmful error in the ALJ's determination that Plaintiff's alleged PTSD and psychosis were not severe impairments, and further finds the ALJ's restrictive mental RFC adequately accommodates Plaintiff's mental impairments.

As for his physical impairments, Plaintiff argues the ALJ's decision should be reversed and benefits awarded because the ALJ found Plaintiff's headaches were non-severe. He argues the ALJ "failed to give proper weight to the diagnosis of cephalgia made at Erlanger Health System after obtaining a history and performing a physical examination." [Doc. 12 at Page ID # 506]. Cephalgia means "headache,"[6] although Plaintiff does not explain the meaning of the word or cite to the page number in the Erlanger records where it appears.

The ALJ found Plaintiff's headaches were the result of high blood pressure, or hypertension, issues (Tr. 13-14), a finding which Plaintiff does not challenge, and which is supported by Plaintiff's medical records from Silverdale Correctional (Tr. 259 (stating Plaintiff has "headaches . . . when BP is high")). As the ALJ found, Plaintiff has a history of hypertension which was not being treated in October 2014, when Plaintiff presented at the Erlanger Emergency Room for an issue with his heel (Tr. 13-14, 310). He went to jail at some point in mid-2015, and was provided with blood pressure medication and monitoring (Tr. 260, 265, 268, 277). There is at least some indication in the record that Plaintiff's blood pressure is controlled by medication (Tr. 259 ("BP hasn't been as well controlled *with medication changes*."); 287 (from 2008, but indicates that Htn, or hypertension, is "controlled," and that Plaintiff was "doing ok on meds")). Thus, if the blood pressure can be controlled with medication, and the headaches arise from high blood pressure, it follows Plaintiff's headaches are also controllable with medication. And "evidence that medical issues can be improved when using prescribed drugs supports [a] denial of

---

[6] *See* Stedmans Medical Dictionary, 161870 (explaining that "cephalalgia" is a synonym for "headache").

17

disability benefits." *Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 762-63 (6th Cir. 2014) (citing *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987)) (other citation omitted). Accordingly, the Court rejects Plaintiff's argument that the ALJ erred in determining Plaintiff's headaches were non-severe impairments.

Finally, Plaintiff argues the ALJ should have concluded his musculoskeletal complaints were severe. The ALJ did not accommodate Plaintiff's musculoskeletal complaints in formulating Plaintiff's physical RFC, because the ALJ found that they were not medically determinable impairments (Tr. 14-15). Plaintiff alleges that in doing so, the ALJ failed to properly consider the "diagnoses of left leg pain and sciatica made by health care providers at Memorial hospital," and the "right shoulder diagnosis made by Southside/Dodson Avenue Community Health Centers." [Doc. 12 at Page ID # 506]. He appears to argue these diagnoses are supported by Plaintiff's own testimony and Dr. Wilkinson's report [*id.* at Page ID # 507].

Plaintiff did present to the Memorial Hospital Emergency Room ("Memorial") in November 2014, complaining of "groin pain radiating to L[eft] ankle." (Tr. 351). He was given medication and instructed to "ice 4-5x/day/ Follow up with primary MD & orthopedic." (Tr. 355-56). Other than the stated restrictions for 4-5 days, there are no other limitations set forth in the Memorial records, and Plaintiff does not cite to any subsequent records indicating he sought further treatment for his alleged sciatica.[7] Moreover, the ALJ expressly considered the Memorial records,

---

[7] Although the ALJ did not discuss "leg pain" as such in his decision, he did discuss "lower back pain," both of which are associated with sciatica, which appears to be Plaintiff's chief complaint concerning his lower back and leg. *See* Stedmans Medical Dictionary 801240 (sciatica is "[p]ain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic nerve dysfunction (hence the term), but now known to usually be due to herniated lumbar disk compressing a root nerve, most commonly the L5 or S1 root.").

emphasizing that despite Plaintiff's complaints of pain, a lumbar spine x-ray performed at Memorial produced only normal results (Tr. 14, 345).  The fact that about a year and a half earlier, Dr. Wilkinson found positive results on Plaintiff's straight leg test (left side) and limited extension of Plaintiff's dorsolumbar spine does not change this result.  The ALJ considered and discussed Dr. Wilkinson's findings and weighed them against the results of the x-ray performed at Memorial and Plaintiff's discounted credibility factors (including the fact that Plaintiff reported walking 10 miles to his consultative exam) and found Plaintiff's sciatica was not a medically determinable impairment.  The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing disability status.  *See DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations—that the ALJ only considered the evidence which weighed against a finding of disability—are seldom successful because crediting them would require courts to re-weigh record evidence).

The Southside/Dodson Avenue Community Health record, which is the only proof Plaintiff cites in support of his claim that his shoulder pain is a medically determinable impairment, is a single, handwritten page that is partially illegible (Tr. 305).  It indicates Plaintiff complained of experiencing severe shoulder pain for two days on December 27, 2013, and he was prescribed Flexeril (Tr. 14, 305).  The record does not explain whether his subjective complaints were confirmed by an exam or any imaging techniques.  Nor does it indicate the nature of the injury or whether, when, or how the physician expected the issue to be resolved.  Moreover, his April 2013 shoulder exam by Dr. Wilkinson was "normal." (Tr. 248).  The Court finds the ALJ considered all of the records concerning Plaintiff's shoulder issues, as well as Plaintiff's testimony and subjective complaints, and further finds there is substantial support for the ALJ's determination that

Plaintiff's "shoulder pain" was not a medically determinable impairment.

In sum, the Court finds the ALJ's determination concerning Plaintiff's alleged impairments is supported by substantial evidence. Significantly, Plaintiff fails to allege any further restrictions on his mental RFC required by his PTSD and psychotic disorder, or point to any opinion or other indication of their severity. The ALJ's finding that Plaintiff's headaches are caused by his high blood pressure, which in turn can be controlled by medication, is supported by substantial evidence in the record. Finally, the Court finds no error with the ALJ's determination that Plaintiff failed to produce adequate evidence of medically determinable impairments in his shoulder or left leg/lower back. Plaintiff's motion will be denied on these issues.

### D. Plaintiff's Physical RFC

As discussed above, Plaintiff's remaining arguments are an attack on the ALJ's determination that Plaintiff could perform work at all exertional levels, and was therefore capable of performing his past relevant work as a general laborer, which requires medium exertion. Plaintiff's contention is that he is limited to light work [Doc. 12 at Page ID # 508-10]. Plaintiff argues that due to his age at the date of application, as well as his education and work history, a limitation to light work would cause him to qualify for benefits under the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2.

RFC is the most a claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect

his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth*, 217 F. App'x at 429. An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Plaintiff has the burden of proving any limitations to his RFC. *See Her v. Comm'r*, 203 F.3d 388, 391 (6th Cir. 1999) (citations omitted).

In making his physical RFC arguments, Plaintiff again relies heavily on his own subjective complaints and the findings of the consultative examiner, Dr. Wilkinson. The Court has already addressed Plaintiff's credibility and Dr. Wilkinson's opinions and will not repeat that analysis here. It suffices to note there is adequate support in the record for the ALJ's conclusion that Plaintiff was not fully credible, and the ALJ gave good reasons for discounting Dr. Wilkinson's opinions concerning Plaintiff's functional limitations, which the ALJ reasonably found were based mostly on Plaintiff's subjective complaints and were not justified by the results of Dr. Wilkinson's exam of Plaintiff. The Court has also already explained in detail that the ALJ did not err in concluding Plaintiff failed to show any medically determinable physical impairments. With no medically determinably physical impairments, and a history of performing at least medium exertional work, Plaintiff's argument that he is limited to performing light work is without merit. The Court finds no error in the ALJ's determination that Plaintiff failed to show he was incapable of performing medium exertion work. Plaintiff's motion will be denied in this regard.

## V.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1) Plaintiff's motion for judgment on the administrative record [Doc. 10] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 13] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE